**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-04-0739-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Donald R. Richardson, Gerald Richardson, | |
| Defendants. | |

Pending before the Court are Plaintiff United States of America's motion for summary judgment against Defendant Donald R. Richardson and motion for entry of default judgment against Defendant Gerald Richardson. Dkt. #46. For the reasons set forth below, the Court will grant Plaintiff's motion for summary judgment in part and deny Plaintiff's motion for entry of default judgment.[1]

**I.    Background.**

Donald was married to Joanne Paulk in the early 1960s. Dkt. #46 Attach. #1 ¶ 1. The couple had a son, Gerald. *Id.* Donald and Joanne divorced, and Joanne later married Carl Paulk. *Id.* Donald and Carl were friends since childhood. *Id.* ¶ 5. Donald paid Joanne child support for Gerald for approximately one year. *Id.* ¶ 3. Gerald lived with Carl and Joanne while he was growing up. *Id.* ¶ 1.

---

[1] The Court will deny the request for oral argument because the parties have submitted memoranda thoroughly discussing the law and evidence and the Court concludes that oral argument will not aid its decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1  In March 1999, Donald purchased a house in Lake Havasu City, Arizona, for
2  $285,000 in cash. *Id.* ¶ 28. The home was titled in Carl's name. Dkt. #46 at 10. Donald
3  was arrested at the Lake Havasu City house on July 28, 1999. Dkt. #60, Ex. A. Donald was
4  found with a Missouri driver's license and a passport issued in the name of Carl Paulk, but
5  with Donald's picture on both forms of identification. Dkt. #46 Attach. #1 ¶ 22. In his
6  deposition, Donald was asked whether he told the police during his arrest that he assumed
7  the name and identity of Carl because he was hiding from the IRS, to which Donald
8  responded: "That's probably the truth." *Id.* ¶ 26 (citing D. Richardson Dep. 120:10-24, Jan.
9  27, 2006).

10  Donald had two offshore bank accounts in the Cayman Islands. *Id.* ¶ 16. One account
11  was in the name of Carl Paulk. *Id.* Money from these accounts was used to invest in several
12  short-term construction loans taken in Carl's name. *Id.* ¶ 24. Donald was determined by a
13  court in the Cayman Islands to be the beneficial owner of the accounts. *Id.* ¶ 19.

14  On May 1, 2000, Donald pled guilty to twelve counts of subscribing a false tax return
15  for the years 1992 through 1997. Dkt. #46 at 3. The May 1, 2000 judgment order stipulated
16  that Donald owed $604,000 to the Internal Revenue Service for back taxes, and also stated
17  that "[a]ny additional fines and/or penalties are separate and will have to be litigated by the
18  IRS." Dkt. #47 at 1.

19  On March 25, 2002, Donald signed IRS Form 4549, entitled Income Tax Examination
20  Changes, which stipulated that he agreed to civil adjustments to his income, tax, and fraud
21  penalties. Dkt. #46 Attach. #1 ¶ 47. On May 20, 2002, assessments were made against
22  Donald for federal individual income taxes, penalties, interest and other statutory additions
23  for the tax periods of 1992 through 1997. *Id.* ¶ 48. Those assessments totaled $604,000 in
24  unpaid taxes and over $1.1 million in penalties, interest and costs. *Id.* Donald paid criminal
25  restitution in the amount of $604,000, but the penalties and interest, which amounted to over
26  $1.4 million as of May 24, 2004, remain unpaid. *Id.* ¶¶ 50, 52.

27  On July 2, 2003, the IRS filed a notice of federal tax lien with the Mohave County
28  Recorder against Carl Paulk as nominee, transferee, and/or alter ego of Donald. *Id.* ¶ 49.

1. In December 2004, a few days prior to Carl's death, the Lake Havasu City house was transferred from Carl to Gerald. *Id.* ¶ 34. Donald was present when the deed was signed, arranged for its recording, and was the recipient of the deed after recording. *Id.* ¶¶ 34, 36.

Neither Carl, nor Gerald has ever lived in the Lake Havasu City house. Dkt. #46 Attach. #1 ¶¶ 33, 56. Donald has lived in the house since 1999, except when he was in prison and the house was rented to a tenant. Dkt. #57 at 4. Donald and Gerald assert that Donald currently rents the property from Gerald. *Id.* at 4-5; Dkt. #46 Attach. #1 ¶ 56.

## II. Summary Judgment Standard.

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

## III. The Civil Tax Assessments.

Plaintiff's motion for summary judgment contends that the civil tax assessments against Donald for 1992 to 1997 should be reduced to judgment. Dkt. #46 at 2. Donald responds with three reasons why the civil tax assessments should not be reduced to judgment, without citing any supporting authority. Dkt. #57 at 5-6.

/ / /

**A.     Legal Standard.**

"Official certificates . . . can constitute proof of the fact that . . . assessments actually were made." *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) (citing *United States v. Zolla*, 724 F.2d 808, 810 (9th Cir. 1984) ("[O]fficial certificates are highly probative, and are sufficient, in the absence of contrary evidence, to establish that the notices and assessments were properly made.")); *see also Perez v. United States*, 312 F.3d 191, 195 (5th Cir. 2002) ("There is . . . substantial precedent that IRS Forms 4340 and 4549 are appropriate sources evidencing the IRS's assessment and notice of tax arrears."). A presumption of correctness attaches to the United States' assessments for unpaid taxes so long as they are "supported by a minimal factual foundation." *Palmer v. United States Internal Revenue Service*, 116 F.3d 1309, 1312 (9th Cir.1997). "Once the [United States] has introduced some evidence that a taxpayer received unreported income, the burden shifts to the taxpayer to prove by a preponderance of the evidence that the deficiency determination is arbitrary or excessive." *Edelson v. Commissioner*, 829 F.2d 828, 831 (9th Cir. 1987). Judgment is appropriate when a taxpayer "fails to offer any evidence to rebut the deficiency's presumption of correctness." *Id.*

**B.     Analysis.**

Donald pled guilty to twelve counts of subscribing a false tax return and paid $604,000 in criminal restitution to the Internal Revenue Service. Dkt. #46 at 3, 5. Plaintiff has provided Certificates of Assessments and Payments for 1992 to 1997. Dkt. #47 Attach. ##1-6. Donald also signed IRS Form 4549, which explained both his tax liability and the penalty amounts for each year from 1992 to 1997. Dkt. #48 Attach. ##1-2. The Form 4549 expressly provides that Donald "consent[s] to the immediate assessment and collection of any increase in tax and penalties . . . plus additional interest as provided by law." *Id.* These documents are presumptively correct and demonstrate that the IRS properly assessed Donald's taxes and provided sufficient notice to Donald of his federal tax liabilities. *See Palmer*, 116 F.3d at 1312.

Donald contends that Form 4549 cannot be used as an admission because he did not

understand the content of the form when he signed it and he would have signed any form the government provided to secure his release from prison. Dkt. #57 at 5. Plaintiff counters that Donald has not alleged and cannot prove he was under duress when he signed the form. Dkt. #59 at 3. Plaintiff contends that Form 4549 is evidence of Donald's admission to tax and penalty assessment, and that Donald did not produce any evidence during discovery to rebut the assessment's figures. Dkt. #46 at 6-7.

The facts of the present case are analogous to *Considine v. United States*, 683 F.2d 1285 (9th Cir. 1982). In *Considine*, the Government moved for summary judgment contending that Considine's tax return falsely omitted income; Considine did not contest the figure. *Id.* at 1288. Considine claimed that the calculations were incorrect because the entire figure was not taxable income. *Id.* The Ninth Circuit stated: "the prior conviction established that [Considine] received a substantial amount of unreported . . . income. Because Considine does not controvert the Government's calculation of the amount of this income, we must conclude there is no material issue of fact on this issue." *Id.* Donald's prior conviction established that he received a substantial amount of unreported income. Donald does not contest the tax liability amount of $604,000, which he has already paid in criminal restitution; nor does he contest the penalty or interest calculations. He has failed to produce any evidence during discovery or with his response to demonstrate errors in the assessments, or that the deficiency determination is arbitrary or excessive. *See Edelson*, 829 F.2d at 831. The evidence presented by Donald is insufficient to rebut the IRS's presumptively correct deficiency determination. Instead, Donald offers only vague and conclusory allegations of incapacity or duress, which fail to set forth specific facts showing that there is a genuine issue for trial on these claims. Because Donald does not controvert the penalty or interest amounts, the Court concludes that there is no material issue of fact. *See id.*

Donald also contends that the his gross income was overstated because the tax assessments did not account for any business expenses. Dkt. #57 at 5. Donald had multiple opportunities to supply evidence regarding his business expenses, including when Form 4549 was originally prepared in 2002, during discovery in this action, or with his response in this

- 5 -

action, but he has provided none. Donald has failed to rebut the deficiency's presumption of correctness. *See Edelson*, 829 F.2d at 831-32; *Considine*, 683 F.2d at 1288.

Donald finally contends that the language of the criminal judgment order did not authorize the IRS to recover interest, only fines and/or penalties. Dkt. #57 at 5. The restitution provision in the criminal judgment order states: "$604,000 to the Internal Revenue for back taxes. Any additional fines and/or penalties are separate and will have to be litigated by the IRS." Dkt. #48 Attach. #3. Donald attempts to characterize the provision as an explicit authorization of the government's sole remaining remedies. Donald does not contend, however, that the government agreed, in return for his guilty plea, that it would not seek interest. The restitution provision in the criminal judgment order was an explicit declaration of the criminal restitution amount for back taxes. The provision made clear that other remedies would be litigated elsewhere, and the Court can find no evidence that the government agreed or the criminal judgment held that those remedies would not include interest. *See* 26 U.S.C. § 6601.

For the reasons set forth above, the Court will grant Plaintiff's motion for summary judgment on the civil tax assessments against Donald.

**IV.   The Fraud Penalty.**

    **A.   Legal Standard.**

Fraud penalties for tax evasion were assessed against Donald pursuant to 26 U.S.C. section 6653.[2] "To establish liability for the section 6653(b) 50 percent civil fraud penalty, the Government must establish: (1) a knowing falsehood; (2) an intent to evade taxes; and (3) an underpayment of tax." *Considine*, 683 F.2d at 1286. "The [Government] must prove fraud by clear and convincing evidence, . . . but intent can be inferred from strong circumstantial evidence." *Akland v. Commissioner*, 767 F.2d 618, 621 (9th Cir. 1985) (citations omitted). Fraudulent intent can be inferred on the basis of "badges of fraud" such

---

[2] The statute states: "[a]ny person . . . who . . . willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty of 50 percent of the total amount of the underpayment of the tax." 26 U.S.C. § 6653.

- 6 -

1  as understatement of income, inadequate records, failure to file tax returns, implausible or
2  inconsistent explanations of behavior, concealing assets, and failure to cooperate with tax
3  authorities. *Bradford v. Commissioner*, 796 F.2d 303, 307 (9th Cir. 1986). "Consistent and
4  substantial understatement of income is itself evidence of fraud." *Lollis v. Commissioner*,
5  595 F.2d 1189, 1191 (9th Cir. 1979); *see also Bahoric v. Commissioner*, 363 F.2d 151, 154
6  (9th Cir. 1966) (holding that a pattern of conduct can provide evidence of fraud).

"Because section 7206(1) [(subscribing false returns)] does not require a willful attempt to evade tax, a conviction under section 7206(1), without more, does not establish fraudulent intent. . . . [H]owever, . . . the prior conviction does estop [a taxpayer] from contesting that the return was willfully false and resulted in an underpayment of tax." *Considine*, 683 F.2d at 1287.

**B.     Analysis.**

Donald pled guilty to twelve counts of subscribing a false tax return in violation of 26 U.S.C. section 7206. Dkt. #46 at 8. Donald is estopped from contesting that his returns were knowingly false or resulted in an underpayment of tax. *See Considine*, 683 F.2d at 1287. The burden remains on Plaintiff, however, to prove by clear and convincing evidence that Donald intended to evade taxes. *See Akland*, 767 F.2d at 621.

The Court must examine the badges of fraud and the evidence presented by Plaintiff to determine if there is a genuine issue of fact concerning Donald's fraudulent intent. Donald consistently and substantially understated his income, as evidenced by his criminal guilty plea. Plaintiff does not contend that Donald kept inadequate records or failed to file tax returns, although Plaintiff does assert that Donald failed to disclose that he had foreign bank accounts on his individual income tax returns. Dkt. #46 at 8. According to Donald, he transferred money to the Cayman Islands because he intended to retire there. Dkt. #57 at 6. Donald claims that he was not aware of the IRS requirement to report offshore accounts on his federal income tax returns, and he knew that he would have to pay the IRS eventually. D. Richardson Dep. 19:1-6; 20:3-6. Once apprehended, Donald cooperated with tax authorities.

Plaintiff points to other statements and actions by Donald as evidence of fraudulent intent. Donald was asked during his deposition whether he told the police during his arrest that he assumed the name and identity of Carl Paulk because he was hiding from the IRS, to which Donald responded: "That's probably the truth." Dkt. #46 Attach. #1 ¶ 26. Donald was also found with two fraudulent forms of identification in the name of Carl Paulk. Dkt. #59 at 5. Donald admitted paying $285,000 for the Lake Havasu City house where he has resided for the majority of the last seven years, but the home was titled in Carl's name before being transferred to Gerald. Donald claims that Carl contributed funds for the purchase of the house. Dkt. #57 at 3.

Viewing the evidence in the light most favorable to Donald, as the Court must do at this summary judgment stage, the Court cannot conclude as a matter of undisputed fact that Plaintiff has proved fraudulent intent by clear and convincing evidence. A genuine issue of material fact remains for the jury. The Court will deny Plaintiff's motion for summary judgment regarding the fraud penalty.

**V.     Property Ownership of the Lake Havasu City House.**

     **A.     Standing to Contest Nominee Status.**

Plaintiff contends that Donald owns the Lake Havasu City house and Gerald holds title as a nominee of Donald. Dkt. #59 at 5. Plaintiff contends that because Gerald has not filed an answer in the present action, Donald does not have standing to oppose the nominee issue on behalf of Gerald. *Id.* at 6. A litigant must always have suffered "'a distinct and palpable injury to himself' . . . that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975) and citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). "When a [litigant's] standing is brought into issue the relevant inquiry is whether . . . the [litigant] has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon*, 426 U.S. at 38.

Plaintiff carries the burden of proving that the house is owned by Donald. If Plaintiff is correct and Donald owns the house, then he will suffer an injury if the home is sold to

satisfy his tax debts. Plaintiff cannot take Donald's property by asserting a theory that Gerald is Donald's nominee, but prevent Donald from contesting that theory. The Court concludes that Donald has standing to litigate the nominee issue.

### B. Is Gerald a Nominee?

#### 1. Legal Standard.

"In seeking to satisfy legitimate tax debts, the government may levy on property held by an individual who is merely the nominee of the taxpayer." *Cal Fruit Int'l, Inc. v. Spaich*, No. CIV.04-2494, 2006 WL 2711664, at *4 (E.D. Cal. Sept. 21, 2006) (citing 26 U.S.C. §§ 6321, 6331); *see G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) (holding that § 6321 allows the government to impose a lien on property in the hands of a third party straw man and that § 6331 permits a levy upon such property); *United States v. Bell*, 27 F. Supp. 2d 1191, 1195 (E.D. Cal. 1998); *see also United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1032, 1036 (10th Cir. 1974) (finding that legal title holder was merely the nominee of the tax payer and government had interest in land); *Towe Antique Ford Found. v. I.R.S.*, 791 F. Supp. 1450, 1454 (D. Mont. 1992) (finding that government may levy on alter ego or nominee of the taxpayer to satisfy legitimate tax debts). The following factors are relevant in determining nominee status:[3]

> (a) No consideration or inadequate consideration paid by the nominee;
> (b) Property placed in the name of the nominee in anticipation of a suit or occurrence of liabilities while the transferor continues to exercise control over the property;
> (c) Close relationship between transferor and the nominee;
> (d) Failure to record conveyance;
> (e) Retention of possession by the transferor; and
> (f) Continued enjoyment by the transferor of benefits of the transferred property.

*Towe Antique*, 791 F. Supp. at 1454; *see also Cal Fruit*, 2006 WL 2711664, at *5; *Bell*, 27 F. Supp. 2d at 1195.

---

[3] "State law governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Wolfe v. United States*, 806 F.2d 1410, 1411 n. 3 (9th Cir. 1986). The Court has not found any reported Arizona decisions which address the issue of what factors are relevant in determining whether an individual is a nominee of a taxpayer.

- 9 -

**2.     Analysis.**

Plaintiff contends that numerous facts demonstrate that Donald is the owner of the Lake Havasu City house and that Gerald holds the house as Donald's nominee. Donald contends that the relevant factors for nominee status are not present.

The first factor is whether the nominee paid inadequate or no consideration for the property. Gerald admits he did not pay any consideration for the house. G. Richardson Dep. 5:18-19, Dec. 7, 2005. Donald contends that the property was a form of payment for costs incurred by Carl in raising Gerald. Dkt. #57 at 3. Joanne stated that Donald "wanted to give Carl the house because of Carl raising Gerald." J. Paulk Dep. 40:2-3, Dec. 7, 2005. Donald also contends that Carl contributed money toward the purchase of the property. Dkt. #57 at 3 (citing D. Richardson Dep. 36:3-5; 119:17-120:5). Gerald stated in his deposition that both Donald and Carl paid for the house. G. Richardson Dep. 5:20-21. Donald claims that the reason Gerald did not pay any consideration is because the house was transferred as an inheritance. Dkt. #57 at 3.

The second factor is whether the property was placed in the nominee's name in anticipation of a suit. Plaintiff points out that the property transfer occurred during the present suit, which seeks to foreclose on the Lake Havasu City house, leading to an inference on concealment. Dkt. #46 at 10. Plaintiff admits that Carl signed the deed transferring the property to Gerald, but contends that Donald was an active participant in the transfer and took the deed to the title company. *Id.* Donald admits that the property was transferred to Gerald while this suit was ongoing, but he claims that the transfer was from the legitimate owner, Carl, to his stepson, Gerald, for a legitimate reason—as an inheritance. Dkt. #57 at 4.

The third factor is the existence of a close relationship between the transferor and the nominee. There is no dispute that Gerald is Donald's son.

The fourth factor is a failure to record the conveyance. Plaintiff admits that the deeds were recorded, but claims that the "hurried nature and poor drafting of the deeds indicate haste and that professionals would not participate." Dkt. #46 at 10. Donald contends that

1  the hurried manner was due to Carl's imminent death. Dkt. #57 at 4.

2  The final two factors are retention of possession by the transferor and continued
3  enjoyment by the transferor of benefits of the transferred property. Donald admits that he
4  currently retains possession of the property, but he contends that he rents the property from
5  Gerald and that Carl rented the property to a tenant while Donald was in prison. *Id.*

6  Plaintiff identifies several other facts to bolster its claim that Gerald is Donald's
7  nominee. Donald possessed two forms of identification with Carl's name, but Donald's
8  picture. Dkt. #46 at 11. Donald allegedly used Carl's name to secure loans and other assets.
9  *Id.* Finally, Donald allegedly admitted that he assumed the name and identity of Carl to hide
10 from the IRS, and that he owns the Lake Havasu City house. *Id.*

11 In light of the disputed evidence, which the Court must construe in the light most
12 favorable to Donald, genuine issues of material fact exist. The Court therefore will deny
13 Plaintiff's motion for summary judgment regarding Gerald's status as nominee.

14 Plaintiff also contends that the facts require a determination that Gerald is the alter ego
15 or fraudulent transferee of Donald. Dkt. #46 at 11. But Plaintiff does not cite any authority
16 or offer any specific evidence in support of this claim.

17 Plaintiff finally contends that Gerald took his interest in the Lake Havasu City house
18 subject to the IRS' federal tax lien, filed on July 2, 2003 against Carl as nominee, transferee,
19 and/or alter ego of Donald. *Id.* at 12. "Federal tax liens against a taxpayer may be foreclosed
20 against property held by a nominee . . . so long as the taxpayer is the equitable owner of the
21 property." *United States v. Marsh*, 114 F. Supp. 2d 1036, 1043 (D. Haw. 2000). Plaintiff
22 must prove that Gerald is Donald's nominee before the federal tax lien can be foreclosed.
23 Because the Court has denied Plaintiff's motion for summary judgment on the nominee issue,
24 the motion for summary judgment on the tax lien will be denied.

25 **VI.    Default Judgment.**

26 Once the Clerk of Court has entered default, a plaintiff may apply for entry of default
27 judgment. *See* Fed. R. Civ. P. 55(b). Rule 55(b) provides for the entry of default judgment
28 by the Clerk or by the Court. Entry by the Clerk is proper when the amount of damages is

"for a sum certain or for a sum which can by computation be made certain." Fed. R. Civ. P. 55(b)(1). Entry by the Court is proper "[i]n all other cases." Fed. R. Civ. P. 55(b)(2). "[T]he grant or denial of a motion for the entry of a default judgment is within the discretion of the court." *Lau Ah Yew v. Dulles*, 236 F.2d 415, 415 (9th Cir. 1956).

"[W]here a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (citing *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2690, (3d ed. 1998) ("As a general rule . . . when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants"). The purpose behind this rule is to prevent inconsistent judgments. *See First T.D.*, 253 F.3d at 532.

Although Plaintiff is not attempting to hold Gerald liable for Donald's debts, the principle applies in this situation. An entry of default judgment against Gerald could produce inconsistent judgments if Donald can prove at trial that Gerald is not his nominee. It would be incongruous and unfair to allow Plaintiff to foreclose on a house that a trier of fact may find belongs to Gerald. Plaintiff's request for entry of default judgment against Gerald Richardson will therefore be denied.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (Dkt. #46) is **granted in part** and **denied in part** as set forth in this order.

2. Plaintiff's motion for entry of default judgment (Dkt. #46) is **denied**.

2. The Court will set a final pretrial conference by separate order.

DATED this 21st day of November, 2006.

_David G. Campbell_
David G. Campbell
United States District Judge